VELDE FORD SALES, INC., Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellants.

Fourth District    No. 4—85—0175

Opinion filed September 26, 1985.—Rehearing denied October 21, 1985.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, First Assistant Attorney General, and Gabriel Rodriguez, Assistant Attorney General, both of Chicago, of counsel), for appellants.

Wayne R. Golomb, of Springfield, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

Plaintiff, Velde Ford Sales, Inc., is in the business of selling new and used motor vehicles at retail. It has the practice of making a charge, over and above the sales price, to those of its customers who so wish, to prepare and deliver to the Secretary of State, applications for new vehicle licenses and certificates of title necessitated because of a sale. On November 23, 1983, defendant, Illinois Department of Revenue (Department) sent plaintiff a notice of tax liability assessing plaintiff with a deficiency under section 2 of the Retailers' Occupation Tax Act (ROTA) (Ill. Rev. Stat. 1979, ch. 120, par. 441), for the period between July 1980 and May 1983, in the sums of $4,382 in taxes, $1,854.27 in interest, and $219.10 in penalties. The assessment arose from plaintiff's failure to include the above charges in the amount of sales upon which it calculated and paid the taxes required by section 2.

After paying the Department the sums assessed, plaintiff filed suit on December 9, 1983, in the circuit court of Sangamon County

against defendants, the Department, J. Thomas Johnson, its director, and James Donnewald, Treasurer of the State of Illinois. The complaint sought to enjoin (1) payment of those sums out of a protest fund in which they were held, and (2) future collection and assessment of taxes based on the previously described fees. Plaintiff also sought a return of the fees paid under protest. After a bench trial of the issues joined, the circuit court eventually entered a modified judgment on February 22, 1985, granting plaintiff the relief requested. Defendants appeal that judgment. We reverse.

Section 2 of ROTA imposes a tax "upon persons engaged in the business of selling tangible personal property at retail" (Ill. Rev. Stat. 1979, ch. 120, par. 441). The tax is measured by gross receipts from sales. (Ill. Rev. Stat. 1979, ch. 120, par. 441.) However, it is not a sales tax, but a tax on the occupation of making retail sales in the State. (*Central Television Service, Inc. v. Isaacs* (1963), 27 Ill. 2d 420, 189 N.E.2d 333; *United Technical Corp. v. Department of Revenue* (1982), 107 Ill. App. 3d 1062, 438 N.E.2d 535.) Defendants maintain that the fee for the preparation and delivery of the applications is such an integral part of the sale that it should be included in the sales price. Plaintiff contends that the fee has sufficient separate identity that it can be considered to be a fee for services separately performed and not part of the remuneration to plaintiff for the sale of the vehicles which the documents involve.

The evidence showed that plaintiff's practice in connection with the sales of motor vehicles was substantially as follows. A customer and a salesperson negotiate until a price has been agreed upon and a written order prepared and signed by both parties. The buyer is then taken by the salesperson to a business office. There, the taxes arising from the sale and the amount necessary to pay for obtaining a license and a certificate of title from the Secretary of State are determined by a person other than the salesperson. At that time, the customer is informed that he can (1) see to the making of application for license and certificate of title and the sending of those documents to the Secretary of State, or (2) have that done by personnel in the business office. In the event the latter option is accepted by the customer, a fee of $25 is usually assessed. Evidence indicated that sometimes the fee is reduced or not charged when a customer objects. Plaintiff's general manager admitted that he would waive the fee if it were necessary to do so to save a sale, but that had not happened.

Defendants call attention to section 1 of ROTA which states in part:

" 'Selling price' or the 'amount of sale' means the consider-

ation for a sale valued in money whether received in money or otherwise \*\*\* and *shall be determined without any deduction on account of the cost of the property sold,* the cost of the materials used, labor or *service cost* or any other expense whatsoever." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 120, par. 440.

Section 1 was the basis for the decision in *Leslie Car Wash Corp. v. Department of Revenue* (1978), 69 Ill. 2d 488, 372 N.E.2d 653, upon which defendants place substantial reliance. There, the taxpayer furnished both car wash services and sold gasoline at retail. It offered customers a discount on a car wash based upon the amount of gasoline purchased from it. In computing its ROTA liability, the taxpayer deducted from its total gasoline sales a sum representing its net cost in furnishing car washes at discounted prices. The court relied on the provision of section 1 of ROTA (Ill. Rev. Stat. 1975, ch. 120, par. 440) which contained the same provisions as at present and concluded that the deduction from gasoline sales made by the taxpayer was for a cost of services in making the sale and was improper.

Here, the taxpayer did not seek a deduction from the sales price charged customers but merely charged the customers for a service made available to them if they wished to accept the service. However, in *Gapers, Inc. v. Department of Revenue* (1973), 13 Ill. App. 3d 199, 300 N.E.2d 779, fees for a service performed incidental to sales were held to be subject to taxes under section 2 of ROTA although a separate charge was made for the services. The taxpayer was a caterer who made a service charge for delivering the catered food to the place where it was to be used in addition to charging a sales price for the food. The court rejected, as contravening section 1 of ROTA (Ill. Rev. Stat. 1971, ch. 120, par. 440), a departmental regulation indicating that delivery charges were not a part of the sale price of goods delivered if separately billed. The court adopted the analysis of the Department hearing officer that the delivery was " '\*\*\* an inseparable link in the chain of events leading to the completion of the sale \*\*\*.' " 13 Ill. App. 3d 199, 203, 300 N.E.2d 779, 782.

The question of whether charges for sales and those for services have separate identity has also been decided in cases where the question is not, as here, whether the fee for the service is actually a part of the sale price, but whether charges for sales in conjunction with the furnishing of services are sufficiently separated from the furnishing of services to be taxed under section 2 of ROTA.

In *Snite v. Department of Revenue* (1947), 398 Ill. 41, 74 N.E.2d 877, the court determined that the operator of a country club was subject to sales tax on food and drink sold in the clubhouse. In *Conti-*

*nental Can Co. v. Nudelman* (1941), 376 Ill. 446, 34 N.E.2d 397, a manufacturer was held to be liable for sales tax on sales of food to its employees at its company cafeteria. In *Lake View Memorial Gardens, Inc. v. Department of Revenue* (1984), 123 Ill. App. 3d 120, 462 N.E.2d 1000, a taxpayer whose primary function was the furnishing of interment services was held to be liable for sales taxes on its separately listed sales of vaults. The customers were not required to purchase the vaults from the taxpayer in order to obtain the interment services.

We conclude that the instant situation is more analogous to *Gapers* than to the three cases where the sales were deemed to have a separate identity to the furnishing of services. Here, the performance of the services in preparing and making the applications was substantially "an inseparable link in the chain of events" involved in the sales of automobiles even though the transaction usually took place after the sale had been completed.

Sections 3—101, 3—104(a), 3—400, and 3—405 of the Illinois Vehicle Code (Ill. Rev. Stat. 1979, ch. 95½, pars. 3—101, 3—104(a), 3—400, 3—405) place substantial responsibility on the owner of an automobile to obtain a new vehicle license and a new certificate of title to an automobile upon its purchase from a dealer. However, other sections also impose substantial responsibility upon dealers to aid the purchasers in this respect. Section 3—104(b) of the Code requires a dealer selling a new vehicle "to promptly mail or deliver the application [for a new certificate of title] to the Secretary of State" (Ill. Rev. Stat. 1979, ch. 95½, par. 3—104(b)). Similarly, under section 3—113(a) of the Act, when a dealer sells a used car, the dealer is required within 15 days of the sale, to "execute the assignment and warranty of title by a dealer, showing the names and addresses of the transferee and of any lienholder *** and mail or deliver the certificate to the Secretary of State with the transferee's application for a new certificate." Ill. Rev. Stat. 1979, ch. 95½, par. 3—113(a).

Thus, at least some of the work for which plaintiff charged the fee in question was for service which it was required to perform in connection with the sale. Although the purchaser might waive performance by plaintiff and elect other means of obtaining the certificates of title and license plates, plaintiff was discharging a responsibility of the sale when it performed some of these services.

Other aspects of the services performed in connection with the documents also show a close relationship between the sales of automobiles and the services. No evidence indicated that plaintiff performed these services for other than purchasers of vehicles. The evidence also

indicated that the price charged was dependent upon the desire of plaintiff to maintain a good relationship with those purchasing the vehicles and that a fee would be waived entirely if necessary to save a sale. Significantly, the fee for the services was only a very small amount in comparison to the sales price of most automobiles.

After considering all of the foregoing aspects of the services in question, we hold that, as a matter of law, the services were an incident of the sale of a vehicle. The Department properly taxed the proceeds as sales under section 2. The judgment appealed is reversed.

Reversed.

McCULLOUGH and MORTHLAND, JJ., concur.