(No. 52703.—)

SAXON-WESTERN CORPORATION, Appellee, v. GEORGE E. MAHIN, Director of Revenue, *et al.*, Appellants.

*Opinion filed September 29, 1980.*

UNDERWOOD, J., dissenting.

William J. Scott, Attorney General, of Springfield (Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for appellants.

Donald L. Johnson and William Biederman, of Marks, Katz, Johnson, Randall, Weinberg & Blatt, of Chicago, for appellee.

Thomas W. Power and Robert D. McDonald, of Power & McDonald, of Washington, D.C., for *amici curiae* Hardee's Food Systems, Inc.

MR. JUSTICE CLARK delivered the opinion of the court:

On September 11, 1972, the plaintiff, Saxon-Western Corp., an Illinois corporation, filed a complaint in the circuit court of Cook County seeking a declaratory judgment and injunctive relief for itself and on behalf of all retail merchants similarly situated. Named as defendants were

George E. Mahin, then Director of the Department of Revenue, William J. Scott, Attorney General of the State of Illinois, and Alan J. Dixon, then the State Treasurer.

The complaint sought, *inter alia,* to enjoin the Director of Revenue from assessing or collecting from the plaintiff or other members of the class the retailers' occupation tax upon discount coupons as provided by the Department of Revenue's revised Rule 46. It also requested a declaration that Rule 46 was contrary to law and violative of the constitutions of the United States and Illinois.

Initially, the trial court issued a temporary injunction preventing the Department from collecting the tax from the plaintiff. Subsequently, on the Department's motion, the court dismissed the complaint and dissolved the injunction on the ground that the plaintiff had failed to exhaust its administrative remedies. That order was appealed and reversed and the cause remanded for further proceedings. 39 Ill. App. 3d 100.

Cross motions for summary judgment were then filed. The plaintiff's motion requested only that Rule 46 be declared illegal and that the Department of Revenue be enjoined from collecting any tax pursuant to it. The circuit court granted the Department's motion for summary judgment, dismissed the plaintiff's complaint, and enjoined the Department from proceeding to collect the tax against the plaintiff pending appeal to this court. No finding as to the propriety of maintaining this action as a class action was ever made by the circuit court. The appellate court held that Rule 46 is unauthorized by the Retailers' Occupation Tax Act and enjoined the Department of Revenue from collecting the tax. The court stated that since the relief granted would inure to the benefit of the plaintiff and all other retailers similarly situated, no useful purpose would be served by remanding the cause for a determination as to whether it was properly a class action. (78 Ill. App. 3d 125.) The defendants appealed. We allowed their petition for leave to appeal pursuant to Rule 315. 73 Ill. 2d R. 315.

The plaintiff issues discount coupons to the general public through newspaper advertising and mailing circulars. A discount coupon will typically indicate a manufacturer's suggested retail price, the plaintiff's nondiscount retail price, and a discount price, available upon presentation of the coupon. The discount is restricted to the specific merchandise identified in the coupon, and the coupons usually contain an expiration date. The plaintiff prints and distributes the coupons itself. The plaintiff collects the used discount coupons from each store, and the plaintiff's advertising department makes a statistical tabulation to determine how effective each advertising campaign has been. The plaintiff does not thereafter tender the coupons to a manufacturer for a redemption. Instead all coupons are destroyed after the tabulations are complete.

The Department of Revenue's Rule 46 was adopted in 1964 in an effort to collect a tax on retailers engaged in the business of redeeming trading stamps for tangible personal property. Rule 46 provided at that time:

> "Persons who engage in the business of transferring tangible personal property upon the redemption of trading stamps shall be deemed to be engaged in the business of selling such property at retail and shall be liable for and shall pay the tax imposed by the Retailers' Occupation Tax Act on the basis of the retail value of the property transferred upon redemption of such stamps. When merchandise is paid for partly in cash and partly by surrendering a trading stamp valued at a specific amount, the total amount (including the value of the surrendered trading stamp) is subject to retailers' occupation tax."

In a 1971 amendment the Department extended the rule to trading coupons stating as follows:

> "The same principles apply to trading coupons. Also, it does not matter how or where the consumer obtained the coupon in the first place (*i.e.*, from a manufacturer or other supplier of the retailer, from the retailer himself or from an advertisement placed in a newspaper by such retailer or his supplier). The measure of the tax in trading coupon re-

demptions is the value of the merchandise transferred for the surrendered coupon, which value would normally be presumed to be the stated value of the coupon plus whatever cash receipts the retailer receives in the transaction. This is true even if the retailer absorbs all of the cost, or if the retailer absorbs a part of the cost, as where a manufacturer only partially reimburses the retailer for the value of the merchandise transferred."

In 1972 the Department of Revenue conducted a retailer's occupation tax audit of the plaintiff. The Department subsequently issued a notice of tax liability for the period March 15, 1971, through April 30, 1972. The plaintiff then commenced this action.

The sole issue presented on appeal is whether the nonreimbursable discount coupons distributed by the plaintiff are taxable as part of the plaintiff's gross receipts. For the reasons stated by the appellate court, we think they are not. The Retailers' Occupation Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 441) imposes a tax upon persons engaged in the selling of tangible personal property at retail based upon a percentage of the gross receipts from such sales. Gross receipts are defined as "the total selling price or the amount of such sales." (Ill. Rev. Stat. 1977, ch. 120, par. 440.) That same section also defines "selling price" or the "amount of sale" as "the consideration for a sale valued in money whether received in money or otherwise, including cash, credits, property *** and services ***." (Ill. Rev. Stat. 1977, ch. 120, par. 440.) The foregoing section was amended in 1963 to include the following provision:

> "Persons who engage in the business of transferring tangible personal property upon the redemption of trading stamps shall be deemed to be engaged in the business of selling such property at retail and shall be liable for and shall pay the tax imposed by this Act on the basis of the retail value of the property transferred upon redemption of such stamps." (Ill. Rev. Stat. 1963, ch. 120, par. 440, as amended by H.B. 576; 1963 Ill. Laws 1767, 1770.

(See *Horn of v. Kroger Co.* (1966), 35 Ill. 2d 125, upholding the constitutionality of the amendment.)

The Department of Revenue does not contend that the 1963 amendment expressly including the retail value of trading stamps in computing a retailer's gross receipts governs this case. It clearly does not. The Department instead argues that since the term "selling price" encompasses the consideration received for a sale valued in money whether received in money or otherwise, the face value of the plaintiff's discount coupons is taxable under the Retailers' Occupation Tax Act. We are compelled to disagree, however, for the reason that the face value of the plaintiff's coupons is *never* received by the plaintiff. It is deducted from the selling price received by the plaintiff, not added to it. In *Keystone Chevrolet Co. v. Kirk* (1978), 69 Ill. 2d 483, this court stated that section 2 of the Act "imposes the tax specifically upon the *seller's* gross receipts. Where those receipts are not in any way reduced, the full amount thereof is subject to the tax." (Emphasis in original.) (69 Ill. 2d 483, 487.) The corollary to that proposition is that where a seller's receipts are in no way increased as the result of a discount program, only so much of the seller's gross receipts as are *actually* realized are taxable.

In *Leslie Car Wash Corp. v. Department of Revenue* (1978), 69 Ill. 2d 488, the retailer attempted to deduct from gross receipts from the sale of gasoline the value of car wash discounts given in return for the purchase of gasoline. This court held that the full gross receipts received by the retailer were taxable. No deductions were allowable on the basis of the claimed value of each car wash. The instant case represents the opposite side of the same coin. In *Leslie* the retailer attempted to deduct a discount from gross receipts. In the instant case, the Department of Revenue asserts that the face value of the discount coupons should be added to the plaintiff's gross receipts. In neither

case is there justification for deviating from the statutory requirement. In *Leslie* the retailer was obligated to pay tax on the gross receipts actually realized by him. In the same way, the plaintiff herein shall not be made to pay a tax on an amount in excess of his gross receipts. In short, where a retailer has foregone realizing cash receipts in the hope of increasing the volume of his business and also in the hope of learning the most effective means of advertising, no taxable event occurs. This result is supported by the concession made by the Department during oral argument that if the plaintiff had just placed items on sale and had not distributed coupons, a tax would be measured by the sale price, not the regular retail price. We perceive no difference between the two situations. Any incidental benefit derived from the use of the coupons is speculative, does not increase the plaintiff's gross receipts and therefore is not susceptible to taxation.

The appellate court reached a similar conclusion in *Martin Oil Service, Inc. v. Department of Revenue* (1975), 30 Ill. App. 3d 927. There a gasoline retailer distributed discount stamps to customers. Upon the presentation of a book representing $2 in stamps, the customer received a discount toward the purchase of gasoline. The Department contended that the value of each stamp book redeemed by the retailer was includible in computing the retailers' taxable gross receipts. The appellate court disagreed: "[S]ince the plaintiff never received the cash represented by the value of a redeemed coupon book, this amount should be deducted from gross receipts by which the tax in turn is measured." 30 Ill. App. 3d 927, 932; accord, *Standard Oil Co. v. State* (1937), 283 Mich. 85, 276 N.W. 908.

The Department argues further that since the plaintiff uses the information gleaned from the use of discount coupons in determining how effective its advertising is, a service is thereby rendered. The Department proposes further that the value of that service to the retailer is the

face value of the coupon. First of all, the Department does not indicate whether the taxable amount would be measured by the difference between the discounted price and the manufacturer's suggested retail price or the lower, retailer's regular price. In either event, however, we do not think this argument has merit, because there is no indication that the benefit the plaintiff receives from the coupons is equal to the face value reflected in the coupons. Moreover, we do not see how the information obtained by the plaintiff qualifies as a service performed by the plaintiff's customers. The customers do not collect and perform a statistical analysis of the coupons; they simply bring them to the store. The plaintiff itself performs the service of gleaning information from the coupons.

Additionally, we emphasize that the result urged by the Department is in conflict with one of its own regulations. Article 3, section 4 (1973), provides:

"DISCOUNT

If a discount is allowed for payment in cash within a stated time, any amounts realized by sellers through failure of purchasers to take advantage of such discounts will be considered to be a part of the taxable receipts from the sale. Conversely, if the seller allows the purchaser a discount from the selling price (such as a discount for prompt payment) and the purchaser avails himself of the discount so that the seller does not receive any receipts from that source, the amount of such discount is not subject to tax."

Clearly, the foregoing regulation excludes discounts from taxation for the reason that a retailer does not receive any receipts when he grants a discount to a customer. Contrary to the Department's assertions, this regulation is not restricted to cash discounts only. No specific limitation is placed on those discounts of which a purchaser does avail himself. (Discounts to retail customers have been accorded the same treatment by several of our sister States: North Dakota, Washington, Indiana, Texas and Missouri; *contra* Connecticut, New Jersey and Massachusetts. See generally

Comment, *The Retail Sales Tax: Shall The Value Of Retailers' Coupons Be Included In The Basis For Computation,* 13 J. Mar. L. Rev. 717, 721 n.36 (1980).)

A final contention made by the Department is that the coupons represent a cost of doing business and as such are nondeductible under section 3 of article 3 (1974) of the Department's regulations:

> "In computing retailers' occupation tax liability, no deductions shall be made by a taxpayer from gross receipts or selling prices on account of the cost of property sold, the cost of materials used, labor or service costs, freight or transportation costs, overhead costs, clerk hire or salesmen's commissions, interest paid by the seller, or any other expenses whatsoever."

This contention is devoid of merit for the reason that the plaintiff is not attempting to deduct the cost of printing or distributing the coupons. It very simply is selling its retail products for a reduced price. It need only therefore pay a tax on the gross amount it actually receives. (*Keystone Chevrolet Co. v. Kirk* (1978), 69 Ill. 2d 483, 487; *Martin Oil Service, Inc. v. Department of Revenue* (1975), 30 Ill. App. 3d 927, 932.) Therefore the Department of Revenue is enjoined from assessing or collecting a tax upon the discount coupons issued by the plaintiff because the 1971 amendment to Rule 46 is unauthorized by law. In light of the foregoing conclusion, it is not necessary to reach the constitutional contentions asserted by the plaintiff. Accordingly, for the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE UNDERWOOD, dissenting:

I dissent because I believe the majority has simply made a mistake. In my judgment, the unequivocal statutory language mandates inclusion of the value of the retail coupons in the gross receipts subject to the retailers' occupation tax. Under the statute, a tax is imposed on

total gross receipts defined as "the total selling price \*\*\*" and "selling price" is defined as "the consideration for a sale valued in money *whether received in money or otherwise,* including cash, credits, property \*\*\* without any deduction on account of the cost of the property sold, the cost of the materials used, labor or service cost *or any other expense whatsoever* \*\*\*." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 120, par. 440.

This case is perhaps best illustrated by the following hypothetical: Plaintiff advertises that, if the reader clips and brings to plaintiff's store the coupon in the ad, the reader may buy a $5 paint brush for $4. Without the coupon the buyer will pay $5 for the brush; by delivering the coupon to plaintiff he buys the brush for $4. To say, as the majority does, that delivery of the coupon is not a part of the "consideration for a sale" defies elementary contract principles and ignores the plain meaning of the statutory language. My colleagues seem to believe that "consideration" refers only to cash, since they say that because "the face value of the plaintiff's coupons is *never* received by the plaintiff" (81 Ill. 2d at 564), that value cannot be included as. a part of the selling price. What seems to me the obvious fallacy in that reasoning is that the statute defines "selling price" as "the consideration for a sale valued in money *whether received in money or otherwise* \*\*\*" (Ill. Rev. Stat. 1977, ch. 120, par. 440). As was said by this court in *Hornof v. Korger Co.* (1966), 35 Ill. 2d 125, 130, in upholding a statute which used the retail value of the merchandise transferred as the measure of the occupation tax on the redemption of trading stamps: "The term 'Gross receipts' is defined as the 'total selling price or the amount of such sales,' *i.e.* sales of tangible personal property, while the phrase 'Selling price or amount of sale' is defined as meaning 'the consideration for a sale valued in money whether received in money or otherwise.' [Citation.] Thus, 'gross receipts' does not

necessarily reflect a sale for cash, but is in effect the value placed upon the property by the seller and accepted by the buyer." Clearly, the $1 differential in the cash payment in the above hypothetical represents the value to the retailer in having the coupon delivered to him. That value lies, at least in part, in the fact that customers are brought to his store with resulting increases in sales of other items; too, the number of coupons received enables him to guage the effectiveness of his advertising program. To say, as my colleagues do, that the value of the coupon is "speculative, does not increase the plaintiff's gross receipts and therefore is not susceptible to taxation" (81 Ill. 2d at 565) completely ignores the statutory definitions and the *Hornof* holding.

Further illustrating what seems to me to be my colleague's misconception that only cash payments can be included in gross receipts is their statement that the plaintiff "very simply is selling its retail products for a reduced price" (81 Ill. 2d at 567). This misstatement is, it seems to me, the crux of the matter. Plaintiff is not simply selling its product for a reduced price—plaintiff will *not sell at the reduced price without simultaneous delivery of the required coupon.* Were plaintiff simply selling at a reduced price without the coupon, there would be no attempt by the Department to collect the tax for Departmental regulations in such cases explicitly measure the tax by the reduced price.

*Keystone Chevrolet Co. v. Kirk* (1978), 69 Ill. 2d 483, involved only the question whether a seller could deduct from his gross receipts rebates paid by a third party. It is not relevant here. *Leslie Car Wash Corp. v. Department of Revenue* (1978), 69 Ill. 2d 488, likewise involved the question of deductibility of the cost of free car washes and is inapposite.

While there appear to be no court decisions concerning the taxability of retailers' discount coupons, there are a

number of administrative regulations and rulings. Those regulations are not uniform, but the reasoning of those taxing the value of the coupons is applicable here. Illustratively, the Connecticut sales tax which is based on gross retail receipts allows cash discounts. (State Tax Guide (CCH) par. 60—295, at 6065-68.) The Bulletin of the Connecticut Tax Commissioner (July 26, 1973) states:

> "Coupons used to pay part of the purchase price of retail merchandise are the same as money. Anything of value which is counted toward the purchase price of goods sold at retail is, under the law, regarded as the same as money for tax purposes. The sales tax is owed on the full purchase price of the merchandise, regardless of how much is deducted by the retailer for coupons turned in by the consumer."

Maryland and Massachusetts have similar rules. (1 All State Sales Tax Rep. (CCH) pars. 15—638, 15—711.) Statutory provisions or administrative regulations in some States provide otherwise as noted in Comment, *The Retail Sales Tax: Shall the Value of Retailers' Coupons be Included in the Basis for Computation,* 13 J. Mar. L. Rev. 717, 721 n.36 (1980).

It seems to me our statute is explicit, and requires reversal of the appellate and circuit courts, dismissal of the complaint for injunction, and a declaratory judgment including in plaintiff's gross receipts the undiscounted value of plaintiff's products for which coupons are required.